IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2014

## STATE OF TENNESSEE v. JOHN BRADFORD ROBINSON

**Appeal from the Circuit Court for Giles County**
**Nos. 15070, 15407, 15458    Robert L. Holloway, Judge**

_____

**No. M2013-00726-CCA-R3-CD   Filed 06/04/2014**

_____

The Defendant, John Bradford Robinson, pled guilty to manufacturing marijuana, sale of marijuana, theft of property valued between $1000 and $10,000, initiation of process to manufacture methamphetamine, and possession of drug paraphernalia. For these convictions, the trial court ordered the Defendant to serve an effective eight-year sentence on probation. After multiple arrests in 2012, the trial court issued a probation violation warrant, and, after a hearing, the trial court revoked the Defendant's probation. On appeal, the Defendant contends that there was insufficient evidence to warrant a revocation of his probation. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., AND JOHN EVERETT WILLIAMS, J., joined.

Chelsea Nicholson, Nashville, Tennessee, for the Appellant, John B. Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Mike Bottoms, District Attorney General; and Beverly White, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

### I. Facts

This case arises from the Defendant's multiple violations of his probation sentences. The Defendant was on probation for committing offenses in three separate cases. On October 12, 2010, in a plea agreement encompassing all three cases, he pled guilty to

manufacturing marijuana, sale of marijuana, theft of property valued between $1000 and $10,000, initiation of process to manufacture methamphetamine, and possession of drug paraphernalia. Pursuant to the plea agreement, the trial court ordered the Defendant, as a Standard, Range I offender, to serve an effective eight-year sentence on probation.

On November 20, 2012, the trial court issued a probation violation warrant based upon the Defendant's new arrests. The warrant was amended on January 28, 2013, alleging another arrest. A hearing was held on March 8, 2013, and the parties presented the following evidence: Lindsay Hill, a Tennessee Department of Correction and Parole probation officer, testified that she supervised the Defendant's probation sentences for cases 15070, 15447, and 15458. Ms. Hill stated that she filed the initial warrant in this case based upon the Defendant's June 4, 2012, arrest for public intoxication, June 5, 2012, arrest for disorderly conduct, and November 15, 2012, arrest for aggravated burglary, theft of property over $1000, attempt to manufacture methamphetamine, possession of drug paraphernalia, possession of methamphetamine for resell, and aggravated child abuse. She stated that, additionally, the Defendant had failed to pay fines, court costs, and supervision fees as required by the conditions of his probation sentences. Ms. Hill testified that she filed an amendment to the probation violation warrant based upon the Defendant's November 15, 2013, arrest for TennCare fraud.

On cross-examination, Ms. Hill testified that the Defendant reported to her two times monthly but "not always as instructed on the scheduling dates." Ms. Hill agreed that the judgment in this case did not indicate a set amount for the Defendant to pay monthly toward court costs and fines.

Michael Thompson, a Giles County Sheriff's Office deputy, testified that he went to the Defendant's residence in Giles County on November 15, 2012, to execute active warrants against the Defendant. Deputy Thompson said that initially Monica Smith opened the door to the residence, but she shut the door upon seeing the officers. Next, the Defendant came to the door. Deputy Thompson advised the Defendant of the arrest warrants and asked him to open the door. The Defendant refused. Deputy Thompson said that he "jerked the door open and placed [the Defendant] in custody."

Deputy Thompson testified that, after securing the Defendant in his patrol car, he returned to the residence and informed Ms. Smith that he was going to conduct a search of the residence. Deputy Thompson explained that both the Defendant and Ms. Smith were serving probation sentences and a condition of probation allowed for a search of a residence or vehicle at any time. Deputy Thompson entered the residence and found the Defendant's children, a seven-year-old and a two-year-old, in the bathroom within close proximity of methamphetamine and the ingredients and processing items necessary to manufacture

2

methamphetamine.

Deputy Thompson testified that he collected the following items from the residence: a spoon with white residue that field-tested positive for methamphetamine, syringes, a glass pipe, a mason jar with white powder residue that field-tested positive for methamphetamine, copper filters with white powder residue that field-tested positive for methamphetamine, a "pot shake and bake two-liter bottle" commonly used in the manufacturing process of methamphetamine, a "gas generator," tubing, funnels with white powder residue, marijuana "joints," aluminum foil pieces, muriatic acid, an empty pseudoephedrine box with a prescription for the Defendant, a gallon of Coleman fuel, drain cleaner, ice packs, additional empty pseudoephedrine blister packs, and coffee filters. As a result of the search, Deputy Thompson quarantined the residence and "the Hazmat team" cleared the residence, disposing of all hazardous waste.

Timothy Scott, a Giles County Sheriff's Office investigator, testified that he was assigned to investigate an alleged residential burglary on Lewisburg Highway that occurred on October 14, 2012. During the course of the investigation, Deputy Scott obtained surveillance footage from a "local store." He said that "two black dogs" were visible on the footage and that one of the dogs was "accounted for, and the other was not." Based upon his investigation, Deputy Scott presented the evidence against the Defendant to the grand jury, seeking an indictment for aggravated burglary and theft.

Kimberly Morton testified that, on October 15, 2012, she returned to her home on Lewisburg Highway with her children after church to find "things were in disarray." She said there were muddy footprints in the home and the back door was open. Ms. Morton had her children leave the house immediately because she was unsure of whether an intruder might still be in the home and called the police. She later found that jewelry, a gun, sinus infection medication, a hair dryer, duffle bags, purses, and jewelry boxes had been stolen. Ms. Morton said that she later identified some of these items at the Sheriff's Department.

Steve Morton testified that he was at work when he learned that someone had broken into his home. He arrived home shortly after the police officers arrived. Mr. Morton recalled going to his shed to see if some copper coils that he had used during renovation of his house had been taken. Upon opening the shed door, a Boston Terrier jumped up on Mr. Morton. Mr. Morton told police that he had never seen the dog before. Mr. Morton said that a watch, valued at $399, and cash in the amount of $270 were missing from inside the house.

Chad Brandon, a Giles County Sheriff's Department deputy, testified that he was dispatched to the Morton's residence on Lewisburg Highway to investigate a possible burglary. He said that he helped process the scene and spoke with the victims. Deputy

Brandon recalled that there was a dog in the shed that was unknown to the victims.

Deputy Brandon testified that he also assisted Deputy Thompson in serving the capias for the Defendant's arrest. Deputy Brandon said that he did not assist in the search of the house but transported the Defendant to jail.

James J. Middlestep, Jr., testified that, on October 15, 2012, Monica Smith asked him to drive her to the grocery store to get food for her children. Mr. Middlestep agreed, and he drove her in his silver Dodge Durango to a local grocery store at around 3:00 p.m. While waiting for Ms. Smith, the Defendant texted Mr. Middlestep, "Hey, will you come pick me up?" Mr. Middlestep drove Ms. Smith home and then drove to meet the Defendant "off of [sic] 31." When he arrived, he found only the Defendant's sister, Leann Toone, and a black and white "little terrier" dog. He recalled that Ms. Toone was standing in front of a house talking with a woman. Ms. Toone got inside the truck with two duffle bags and indicated in which direction the Defendant had gone.

Mr. Middlestep testified that he drove down Lewisburg Highway looking for the Defendant, whom he found in front of a house "talking to some older guy." Mr. Middlestep pulled into the driveway, and the Defendant got into the truck. As they drove away, the Defendant pointed to a house along Lewisburg Highway and said, "[t]hat's the house we just got." Mr. Middlestep said he was uncomfortable because Ms. Toone was pulling items, including an iPhone and an iPad, out of the duffle bags.

Mr. Middlestep drove the Defendant home, where he witnessed the Defendant engage in a physical altercation with Ms. Smith. Mr. Middlestep said that he took the Defendant's and Ms. Smith's "two little boys" outside of the house, so they would not witness the fight between their parents. Mr. Middlestep said he then interceded between the Defendant and Ms. Smith, telling Ms. Smith "to go out to the car." After Ms. Smith left, he spoke with the Defendant about Ms. Smith needing to "get [ ] out of this environment." The Defendant gave Mr. Middlestep a $100 bill to pay for a hotel room for Ms. Smith.

Mr. Middlestep testified that he never "cook[ed]" methamphetamine at the Defendant's residence but that he witnessed the Defendant doing so one time while he was "hanging out" at the Defendant's home. He could not recall the exact date, but he estimated that it was in September or October of 2012. Mr. Middlestep testified that, when cleaning out the backseat of his truck, he found a plastic bag with a sheet of Elvis stamps. He acknowledged that he had gone on a three-week methamphetamine binge but said he had since stopped using the drug.

Don Ward, a Giles County Sheriff's Department investigator, testified that he was

4

involved in the aggravated burglary investigation involving the Defendant. During the course of his investigation, he spoke with Ms. Smith at the Star Motel. Ms. Smith had a Boston Terrier at the motel with her. Investigator Ward stated that he was present when the Defendant was arrested. From the Defendant's house, Investigator Ward collected a pair of khaki, lace-up boots. He stated that the tread on the boots appeared "identical" to the tracks found at the burglary scene.

Claudia Worsham testified that, at around 4:00 or 5:00 p.m. on October 15, 2012, she was at home when she heard her dog barking. She stepped outside and saw a Boston Terrier dog "shuffling" with her dog. She "hollered at the little dog and told it to go on" before noticing a female, later identified as Ms. Toone, walking toward her. Ms. Worsham described Ms. Toone as wet and muddy and said she appeared to be upset. Ms. Toone told Ms. Worsham that she had been "ginseng hunting" in the woods and became lost. She said her cellular telephone battery was dead and asked if she could charge her telephone in order to contact "the people that [were] picking [her] up." Ms. Worsham noticed that Ms. Toone had two cellular telephones. Ms. Worsham allowed her to plug her cellular telephone into an outlet in the car shed. Ms. Toone told Ms. Worsham that her brother was the Defendant. At some point, a tan SUV appeared, and Ms. Toone took her dog and got inside the vehicle. The following day, sheriff's deputies came to Ms. Worsham's house and asked her to look at a photographic line-up. Ms. Worsham identified Ms. Toone as the woman who had been at her house the previous day.

Jackie Worsham testified that he noticed a Boston Terrier in his yard. He had never seen the dog before and tried to chase the dog away, but the dog did not want to leave. Mr. Worsham went inside his home for a few minutes and when he returned he found his wife, Ms. Worsham, speaking with Ms. Toone. His wife told him that Ms. Toone was charging her cellular telephone, and she asked Mr. Worsham to get Ms. Toone a bottle of water. When he returned with the water, he noticed a "brownish color" Durango. Ms. Toone flagged down the Durango and left in it with her Boston Terrier.

Lisa Packard testified that she lived on Lewisburg Highway near 31A. On October 14, 2012, at around 1:00 p.m., she was preparing for her daughter's birthday party when a black and white dog ran into her home through the open door. She said that, "a girl came in like right after it to get the dog" and then went back outside and was standing by the mailbox. A man Ms. Packard identified in court as the Defendant then joined the woman, and they walked "toward the highway." Later that day at around 4:00 p.m., the Defendant came back and asked if he could use a cellular telephone. Ms. Packard agreed, and the Defendant "pulled out a wad of money" and offered to pay for use of the telephone. The Defendant explained to Ms. Packard that he needed to "call for his ride." Later, Ms. Packard saw an SUV arrive.

After hearing the evidence, the trial court made the following findings:

> I find the State has proven by an appropriate standard, that the conduct related to the charges of aggravated burglary and theft, the manufacture of methamphetamine, and all of the drug paraphernalia, possession of methamphetamine for resell, and the negligent child abuse, I find it's sufficient to find a violation of rule one.

> I also find concerning the drugs that were found is sufficient to find a violation of rule eight related to the possession of controlled substances or illegal substances. I, therefore, find that ground for revocation.

The trial court then revoked the Defendant's probation and placed his sentences into effect. The trial court subsequently issued two written orders. One order placed the Defendant's sentences into effect and the other order identified violations of probation Rule #1 and Rule #8 as the basis for the revocation. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court's revocation of his probation sentences was an abuse of discretion. Specifically, he attacks the evidence as insufficient to support a revocation of his probation sentences. The State responds that the trial court properly revoked the Defendant's probation. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2010), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554

6

(Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the present case, the trial court found that the Defendant had violated the condition of probation that states, "I will obey the laws of the United States as well as any municipal ordinances." The trial court also found that the Defendant had violated the condition that states, "I will not use intoxicants (beer, whiskey, wine, etc) of any kind to excess or have in my possession narcotic drugs or marijuana. I will not enter an establishment whose prime purpose is to sell alcoholic beverages (bars, taverns, clubs, etc.). I will submit to random drug screens as directed."

We conclude that the record supports the trial court's finding that the Defendant had violated the conditions of his probation sentences. The Defendant's probation officer, Ms. Hill, testified about the Defendant's subsequent arrests in violation of his conditions of probation. Deputy Thompson testified that he served arrest warrants for the Defendant's involvement in the burglary of the Morton's home. After taking the Defendant into custody, Deputy Thompson searched his residence, finding drugs, drug paraphernalia, and numerous items used to manufacture methamphetamine. The Defendant's two-year-old and seven-year-old children were present in the house at the time. The record contains the testimony of witnesses concerning the Defendant's violations of probation. The trial court heard the proof and accredited the State's witnesses.

The Defendant specifically asserts that "the trial court did not make findings of fact sufficiently orally or through a written order." We respectfully disagree. The trial court made the necessary findings of fact, expressly stating the probation rules that were violated and the offenses that were committed by the Defendant. It did so orally at the end of the hearing and issued two subsequent written orders.

We conclude that there is substantial evidence supporting the trial court's conclusion that violations of the terms of the probation sentences occurred and that the Defendant's probation should be revoked based upon those violations. *See State v. Delp,* 614 S.W.2d 395, 298 (Tenn. Crim. App. 1980). Accordingly, the trial court did not abuse its discretion when it revoked the Defendant's probation. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE